IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LONG NGUYEN,

    Plaintiff,                           No. CIV S-08-0380 FCD EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.                       FINDINGS AND RECOMMENDATIONS
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons discussed below, the court recommends that defendant's motion be granted and that plaintiff's motion be denied.

I. BACKGROUND

       Plaintiff formally applied for DIB and SSI on August 8, 2003, alleging that he became disabled on May 11, 1999 due to his "Hepatitis C and HIV infection." Administrative Record ("AR") 58-61; 68-77. His application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing. AR 27, 28, 45. On November 9, 2004, a hearing was held before administrative law judge ("ALJ") Brenton Rogozen. AR 444-67. Plaintiff was

1

represented by counsel and testified at the hearing. *Id.*

The ALJ issued a decision on December 9, 2004, finding that plaintiff was not disabled.[1] AR 14-23. The ALJ made the following specific findings:

> 1. The claimant met the disability insured status requirements of the Act on his alleged onset date of disability and has continued to meet them through at least the date of this decision. The claimant has not engaged in substantial gainful activity since his alleged onset date of disability.
>
> 2. The medical evidence establishes that the claimant has various impairments which are "severe," but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 3. The claimant's allegations of disabling pain are not credible for the reasons given in the rationale portion of this decision.
>
> 4. The claimant has the ability to lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday (20 CFR 416.945 and 404.1545).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

> 5. The claimant has relevant work experience as an assembler which requires sedentary work. This finding is supported by the testimony of the impartial vocational expert.
>
> 6. The claimant is able to perform his past work.
>
> 7. The claimant was not under a "disability," as defined in the Social Security Act (20 CFR 418.920(f) and 404.1520(f)).

AR 22.

On December 28, 2004, plaintiff requested review by the Appeals Council, and the Appeals Council declined to review the case. AR 12, 5-7. Plaintiff then instituted an action for judicial review by this court, which resulted in a remand for the ALJ to reconsider whether plaintiff had a severe mental impairment. AR 516-27. On remand, the ALJ conducted a hearing on September 6, 2007; plaintiff was again represented by counsel. AR 577-613. The ALJ issued an unfavorable decision on December 19, 2007. AR 468-82. The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since July 6, 2003, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> ***
>
> 2. The claimant has the following severe combination of impairments: HIV positivity; Acquired Immune Deficiency Syndrome (AIDS); hepatitis C positivity; plantar warts; sinusitis; gastroesophogeal reflux disease (GERD); a major depressive disorder; posttraumatic stress disorder (PTSD); and a generalized anxiety disorder. (20 CFR 416.920(c)).
>
> ***
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> ***
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant is limited to lifting and carrying no more than 20 pounds occasionally and no more than 10 pounds

3

> frequently.  The claimant is also limited to standing and/or walking no more than 6 hours total in an 8-hour workday and sitting no more than 6 hours total in an 8-hour workday.  The claimant has moderate restriction of his ability to understand, remember, and carry out complex or detailed tasks and of his ability to make judgments on complex work-related decisions.  The claimant has no significant limitation of his ability to understand, remember, and carry out the simple and repetitive 1-2 step tasks characteristic of unskilled work.  The claimant has mild restriction of his ability to interact appropriately with supervisors, coworkers, and the general public; and of his ability to respond appropriately to changes in a routine work setting.
>
> ***
>
> 5.  The claimant is able to perform his past relevant work (20 CFR 416.965).
>
> ***
>
> 6.  The claimant has not been under a disability, as defined in the Social Security Act since [8/6/2003], the date the application was filed (20 CFR 416.920(f)).

AR 471-82.

Plaintiff did not file exceptions to the Appeals Council, and the Appeals Council did not assume jurisdiction over the case, making the ALJ's December 19, 2007 decision the final decision of the Commissioner of Social Security.  AR 468-69.

II. <u>ISSUES PRESENTED</u>

Plaintiff contends that the Commissioner erred in sustaining the ALJ's determination that he is "not disabled" because substantial evidence does not support the ALJ's conclusions about plaintiff's residual functional capacity, and the ALJ did not fully and fairly review and analyze plaintiff's credibility.  Pl.'s Mot. for Summ. J. at 7, 11.

III. <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

4

180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

IV. <u>ANALYSIS</u>

    A. <u>Substantial Evidence Supports the ALJ's RFC Conclusions</u>

Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence regarding plaintiff's mental limitations. Dckt. No. 20 at 7. Plaintiff argues that the ALJ did not conduct a de novo hearing after remand and instead "had already made his credibility conclusions and the other assessments adverse to Plaintiff." *Id.* Plaintiff contends that the ALJ "relied exclusively" on a single consultative examination "at the expense of ALL other evidence." *Id.* at 8. Plaintiff also argues that "the ALJ misstate[d] the truth" by suggesting that the four doctors of record support non-disability; credited Dr. Morse's report, which was "completely out of touch with any of the evidence"; erroneously credited Dr. Morse's report over an earlier consultative examination report by Dr. Zizmore; ignored some of the moderate limitations set forth in the consultative examination report of Dr. Sanchez; improperly discredited the treating psychiatric opinion of Dr. McGlynn; and improperly discredited the findings of plaintiff's new treating doctor, Dr. Reicherter, who found that plaintiff

5

had a Global Assessment of Functioning (GAF) score of 45.[2]  *Id.*  Defendant counters that the ALJ's mental RFC finding was supported by substantial evidence.  Dckt. No. 22 at 10-13.

The determination of a claimant's RFC is wholly within the province of the ALJ.  *See* Social Security Ruling ("SSR") 96-8p.  The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence.  *See id.*  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 830.  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen*, 80 F.3d at 1285.  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, the ALJ found that plaintiff "has moderate restriction of his ability to understand, remember, and carry out complex or detailed tasks and of his ability to make judgments on

---

[2] The GAF Scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  The American Psychiatric Association's Multiaxial Assessment, set forth in the Diagnostic and Statistical Manual of Psychiatric Disorders, ("DSM-IV") (4th Ed. 2005), at 34.  A GAF of 41 to 50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifiting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.*

6

complex work-related decisions," "has no significant limitation of his ability to understand, remember, and carry out the simple and repetitive 1-2 step tasks characteristic of unskilled work," and "has mild restriction of his ability to interact appropriately with supervisors, coworkers, and the general public; and of his ability to respond appropriately to changes in a routine work setting." AR 475. The ALJ considered the medical opinions in the record regarding plaintiff's mental limitations and set out a thorough summary of those opinions. AR 475-81.

The ALJ gave great weight to the opinions of Drs. Sanchez and Morse that plaintiff could perform at least simple tasks. AR 479-81. The ALJ noted that plaintiff's psychological consultative examination with Dr. Sanchez on November 17, 2003 "was essentially normal and notable only for some reported sadness and reported difficulty with night sweats and nightmares." AR 479. Dr. Sanchez diagnosed plaintiff with a GAF score of 57[3] and stated that he believed plaintiff had no restriction of his ability to perform daily activities; would have no difficulty being socially appropriate; would have only mild to moderate difficulty concentrating and maintaining adequate work pace; and could perform moderately complex tasks. AR 307-08.

Dr. Morse, a psychologist who examined plaintiff on June 20, 2007, and who had all of plaintiff's records for review, including the observations of Drs. McGlynn, Zizmore, and Sanchez, found that plaintiff would have mild to moderate difficulty understanding, remembering, and carrying our complex tasks due to inattention; would have only mild difficulty copy with normal stress; and would have only mild difficulty interacting with supervisors, coworkers, and the general public due to mild anxiety. AR 532-35. Dr. Morse also opined that plaintiffs' main obstacle to adequate work performance would be his non-psychiatric medical conditions. *Id.* Dr. Morse found that plaintiff was alert and fully oriented, with linear thought

---

[3] A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers).

process, logical thought content, and intact insight and judgment. *Id.* Dr. Morse's opinion was based on a detailed review of plaintiff's longitudinal records, a new mental status examination, and psychometric testing. *Id.*

The ALJ specifically found that although Dr. Morse's opinion, which was the "most recent and most reliable medical evidence concerning [plaintiff's] psychiatric impairments," indicated that plaintiff's combined mental impairments were "severe" enough to prevent plaintiff from performing skilled or semiskilled work on a regular and continuing basis, the evidence also indicated that the combined mental impairments "would not impose any significant limitation of his ability to meet the basic mental demands of competitive renumerative unskilled work on a regular continuing basis." AR 480; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008) (RFC finding for simple tasks is consistent with finding that claimant had moderate limitations in persistence, pace, and concentration); SSR 85-15 (unskilled work involves "dealing primarily with objects, rather than with data or people"). The ALJ's reliance on the opinions of Drs. Sanchez and Morse was based on substantial evidence in the record.

Additionally, the ALJ provided specific, legitimate reasons based on substantial evidence for rejecting the opinion of Dr. Zizmore, a consulting psychiatrist, who opined that plaintiff would have moderate difficulty with one- or two-step job instructions, relating to others, working at an ordinary pace, tolerating ordinary job stresses, and following simple safety rules. AR 478-79; 150. Specifically, the ALJ found that Dr. Zizmore's opinion was dated October 22, 1999, four years before plaintiff's application date, and therefore deserved less weight than evidence dating from the relevant period. Additionally, the ALJ noted that Dr. Zizmore did not review the medical records to the extent that Dr. Morse did eight years later and did not include administration of several of the tests performed by Dr. Morse. AR 478. The only record Dr. Zizmore reviewed was an HIV questionnaire that plaintiff completed. AR 147. Further, the ALJ found Dr. Zizmore's opinion to be unreliable because it contained internal inconsistencies. For example, the ALJ noted that despite making normal findings on the mental status examination,

including intact three-step commands, Dr. Zizmore stated that plaintiff could not handle one- or two-step instructions. AR 150. Also, Dr. Zizmore's opinion that plaintiff would have difficulty following simple safety instructions was contrary to his finding that plaintiff had good judgment. *Id.*

After addressing several of these concerns, the ALJ stated:

> Based upon the later progress notes outlined below revealing the claimant's completely normal presentation and mental status examinations; on later and more thorough psychiatric and psychological examinations which indicated less limitation of the claimant's mental functional level; on the well supported medical opinions of subsequent examining mental health care specialists, and on the claimant's acknowledged significant activities including, as outlined above, regularly attending and completing college-level classes; the undersigned concludes that Dr. Zizmore was basing his opinion substantially on the claimant's subjective statements and complaints, which the undersigned finds are not generally credible.

AR 478.

The ALJ also provided specific, legitimate reasons based on substantial evidence for giving less weight to the opinion of Dr. McGlynn, a treating psychiatrist, who concluded on November 8, 2004 that plaintiff would be seriously limited in, but not precluded from, dealing with stress, maintaining attention and concentration, handling complex instructions, and demonstrating reliability. AR 479; 436-37. The ALJ found that Dr. McGlynn's opinion was entitled to less weight than Dr. Morse's "because it was based on only two examinations of plaintiff, the last of which occurred more than six months prior to the date he issued his opinion, because it contains little in the way of explanation or rationale for the limitations it imposes, appears to be based substantially upon the claimant's subjective complaints and reported history, and because Dr. McGlynn expressly qualified the opinion by stating that because he had not seen the claimant in six months he would recommend further evaluation by another psychiatrist." AR 481; 436-38. An ALJ is permitted to reject a treating source by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Magallanes*, 881 F.2d at 751. Here, the ALJ did just that.

Finally, the ALJ provided specific, legitimate reasons based on substantial evidence for rejecting the May 31, 2007 initial intake evaluation of Dr. Reicherter, plaintiff's treating psychiatrist, which concluded that plaintiff had a GAF of 45. AR 479. The ALJ found that progress notes from Dr. Reicherter's examinations of plaintiff on May 31, 2007 and August 23, 2007 reveal that plaintiff's mental status examinations were entirely normal. *Id.* The ALJ stated that "in light of the entirely normal mental status examinations . . . which are totally inconsistent with severe occupational limitation, the GAF score of 45 assigned following Dr. Reicherter's initial intake evaluation on May 31, 2007 was based substantially on the claimant's subjective statements and complaints." AR 479; 571-76.

Because the ALJ's RFC finding was supported by substantial evidence, and the ALJ provided specific, legitimate reasons based on substantial evidence for rejecting the opinions of Drs. Zizmore and McGlynn, as well as the initial intake evaluation by Dr. Reicherter, plaintiff is not entitled to relief on this ground.

### B. Substantial Evidence Supports the ALJ's Credibility Finding

Plaintiff argues that the ALJ erred in finding that plaintiff was not entirely credible and that the ALJ's rationale for rejecting his credibility is inconsistent with the law cited by the ALJ and with controlling case law. Dckt. No. 20 at 11-13. Specifically, plaintiff contends that the ALJ misrepresented plaintiff's full testimony and took statements out of context when noting that plaintiff did not report depression or anxiety symptoms at the first hearing. *Id.* at 11-12. Plaintiff also argues that his complaints about "dealing with people is not contradicted by going to classes and having difficulty staying in class," and that the ALJ said nothing about plaintiff's complaints during the second hearing regarding pain and fatigue. *Id.* at 12-13. Defendant counters that the ALJ properly found plaintiff not credible. Dckt. No. 22 at 13-16.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g.,*

*Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  *Id.* at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ made specific findings regarding plaintiff's credibility, as follows:

> The claimant originally alleged disability due to chronic back pain, easy fatigibility, whole body pain, headaches, and concentration deficits which began in 1999 but became disabling in 2002.
>
> During the initial hearing held on November 9, 2004 the claimant added complaints of diarrhea, confusion, and "problems dealing with" supervisors and others.  However, the claimant acknowledged during his testimony at the same hearing that he was living in a house with his wife and six other people and was taking two college-level classed, English and French, which he attended two hours per day and four days per week.  He acknowledged that he was able to drive a car and drove himself to class almost daily.  He testified that if he felt uncomfortable during the classes he was free to leave, which he did approximately 1-2 times per week.  The claimant testified that he "does not feel happy" doing anything anymore, and was "unable to breathe right."  The claimant testified that he was able to lift and carry 5-

11

10 pounds frequently , sit for 1-2 hours at one time, and stand and walk for 10-50 minutes at one time. Although the claimant testified that he "did not feel happy doing anything," further questioning revealed that he did not feel happy doing anything due to pain, fatigue, and difficulty breathing rather than anxiety, depression, or any mental impairment. In fact, the claimant did not actually directly testify to the presence of any significant anxiety or depression at the original hearing. The only references made by the claimant during his testimony to potentially psychiatric symptoms were in statements, as outlined above, that he did not feel happy doing anything, when he reported that he experienced confusion, and when the claimant responded to a question from his attorney asking whether he was "seeing anyone for counseling." The claimant responded to this question by testifying that he had seen a counselor, Dr. McGlynn at the Pace Clinic, on a few occasions for his mental problems. He testified that he had been prescribed some medications but did not yet feel any change as a result of the medications and counseling. The claimant also later testified that his "confusion" was the result of side effects from prescribed medications, as was his diarrhea and fatigue.

During his most recent hearing held on September 6, 2007 the claimant testified that he had been suffering from arthritis in the right elbow and both hands "for a long time" but had been diagnosed with arthritis in early 2007. He also testified that he suffered from plantar warts on [his] feet so that he was no longer able to stand more than 15 minutes at one time. The claimant testified that he was no longer suffering from chronic diarrhea as [a] result of prescribed medications, since a change in his medications in the beginning of 2007. The claimant testified that he had been able to complete the English and French courses he had been taking at the time of his previous hearing, and was continuing to take courses to keep himself occupied. He testified that he took and completed a literature course last semester, and was currently taking computer and psychology courses in the current semester.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. In reaching this conclusion, the undersigned has considered the claimant's own lack of consistent subjective complaints in materials submitted in connection with his application for benefits, in statements made to his doctors and contained in the record, and during testimony at the hearings. The undersigned has also considered the statements made by the claimant to his physicians that he was only suffering from occasional and mild/manageable symptoms including low back pain, diarrhea, and attention deficits; as well as the conflicting and well supported medical opinion of

the state agency medical consultants, examining physicians Dr. Morse, Dr. Gable, Dr. Shakir, and treating physician Dr. Arnold Leff who all refused to corroborate the degree of limitation alleged. The undersigned has further considered the presence of several essentially normal or only minimally abnormal examinations and diagnostic test results in the record; the presence of significant daily activities – including attending college-level classes regularly for the past several years – fundamentally inconsistent with complaints of disabling anxiety, depression, fatigue, confusion, and cognitive deficits; the claimant's inconsistent work history and earnings record even before the alleged onset of disability; and the general lack of consistency of claimant's subjective complaints throughout the medical record.

As outlined above, despite the claimant's testimony and subjective complaints of disabling pain, fatigue, anxiety, depression, confusion, cognitive deficits, and difficulty relating with others; the claimant's treating and examining physicians repeatedly noted that he presented alert and oriented and in no apparent distress; with a normal mood and affect; and did not complain of the same constant and severe and disabling pain, fatigue, dizziness, confusion, and cognitive deficits he has generally alleged.

Furthermore, the claimant's treating physicians noted that his HIV/AIDS has been stable with low viral loads and stable lymphocytes. Stress echocardiograms were also negative, with the claimant demonstrating good functional capacity by achieving 9.8 Mets on the Bruce protocol and experiencing no inappropriate shortness of breath or chest discomfort. Mental status examinations were also repeatedly entirely normal.

Still further, the claimant's most recent examinations noted only some minor tenderness in the elbow and the fingers of both hands. The claimant has been repeatedly noted to present in no apparent distress and with no abnormal joint warmth, swelling, or other abnormality. Furthermore, despite testifying at the most recent hearing to continuing symptoms of unchanged severity since his previous hearing, the claimant had continued to report to his doctors only occasional shortness of breath – despite acknowledging that he continued to smoke daily, only occasional tenderness in his fingers, only occasional diarrhea, only occasional and minor low back pain, only occasional upset stomach, and no dizziness since March of 2006.

AR 476-78 (internal citations omitted).

Ultimately, the ALJ concluded that plaintiff was not fully credible due to numerous inconsistencies in plaintiff's own testimony; numerous inconsistencies between plaintiff's claims and his treatment records; because many of plaintiff's subjective symptoms were easily

13

controlled; and because plaintiff engaged in daily activities that undermined his claim of total disability. AR 476-79. Those conclusions were supported by clear and convincing evidence in the record and were thoroughly explained in the ALJ's decision. Although plaintiff may disagree with some of the specific findings, because the credibility finding was supported by clear and convincing evidence in the record, the court may not second-guess that finding. *Thomas*, 278 F.3d at 959. Therefore, plaintiff is not entitled to relied on this ground.

V. CONCLUSION

In conclusion, the court finds that the ALJ's decision is supported by substantial evidence in the record and based on the proper legal standards. Therefore, IT IS RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied;

2. The Commissioner's cross-motion for summary judgment be granted; and

3. The Clerk be directed to enter judgment in the Commissioner's favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 8, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE